# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0980V

| | |
|---|---|
| KIMBERLY AXELROD,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: December 15, 2023 |

*Catherine Wallace Costigan*, Maglio Christopher & Toale, PA, Washington, DC, for *Petitioner*.

*Nina Ren*, U.S. Department of Justice, Washington, DC, for *Respondent*.

## DECISION AWARDING DAMAGES[1]

On February 22, 2021, Kimberly Axelrod filed a petition[2] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following her receipt of an influenza ("flu") vaccine on September 22, 2020. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Petitioner filed a more detailed amended petition on January 3, 2022. *See* ECF No. 18.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On October 25, 2022, I issued Findings of Fact concluding that Petitioner's vaccination was "more likely than not" administered in her left arm, that her injury persisted for more than six months, and that onset occurred within 48 hours. Findings of Fact (ECF No. 42). Respondent did not raise any further objections to the claim upon filing the Rule 4(c) Report (ECF No. 50), and a Ruling on Entitlement was issued in March 2023 (ECF No. 53). However, the parties could not agree on the appropriate award of damages and have submitted briefing on the subject. Petitioner's Brief filed June 13, 2023 (ECF No. 58); Respondent's Response filed Aug. 11, 2023 (ECF No. 59); Petitioner's Reply filed Sept. 8, 2023 (ECF No. 60). The matter is now ripe for adjudication. For the reasons set forth below, I find that Petitioner is entitled to an award of **$66,988.25, representing $65,000.00 for actual pain and suffering, plus $1,988.25 for actual unreimbursable expenses.**

## I. Authority

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *McKenna v. Sec'y of Health & Hum. Servs.*, No. 21-0030V, 2023 WL 5045121, at *1-3 (Fed. Cl. Spec. Mstr. July 7, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

## II. Appropriate Compensation for Petitioner's Pain and Suffering

### A. Consideration of the Evidence

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult, with no impairments to her mental faculties or capacity. I therefore analyze principally the severity and duration of Petitioner's injury. In

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

2

performing this analysis, I have reviewed the record as a whole, including all medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I also have taken into account prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and I rely upon my experience adjudicating these cases. However, I base my ultimate determination on the specific circumstances here.

Petitioner was thirty-eight (38) years old when vaccinated. She emphasizes that she exercised regularly, including lifting weights and attending physical fitness classes. Brief at 5 (citing Ex. 7 at 4; Ex. 13 at 32). She also received periodic chiropractic treatment, with the last pre-vaccination encounter occurring in March 2020 (and hence several months prior to it). Response at 3; *see generally* Ex. 28 at 15 – 46.

On September 22, 2020, Petitioner received the subject flu vaccine in her left non-dominant shoulder, while sitting in her car outside of an urgent care clinic. Findings of Fact (ECF No. 42) at 4 – 5, 9 - 10. Two days later, she underwent surgery on her left foot. Ex. 13 at 52. To manage post-operative foot pain, she took Percocet (oxycodone-acetaminophen) for 4 days, Promethazine for 6 days, and aspirin (325 mg) for 30 days. Ex. 13 at 30. Petitioner's left shoulder was not addressed at several subsequent intervening treatment encounters, including an October 2nd primary care ("PCP") encounter via telemedicine for possible COVID-19 infection; October 2nd and 24th orthopedics follow-up appointments for her foot; and October 13th and October 22nd chiropractic "routine maintenance appointments." Ex. 10 at 7 – 8; Ex. 13 at 30 – 35; Ex. 28 at 13 – 14.

When Petitioner first sought treatment for her shoulder thirty-seven (37) days post-vaccination, on October 29th, she presented to her PCP, and she did not receive any additional pain medication. Ex. 7 at 10. Five days later, her orthopedist recorded that Petitioner's pain was "moderate" (5/10) but worse with movement while improved with rest. Ex. 13 at 38. On exam, Petitioner's left shoulder range of motion ("ROM") was normal with pain at the endpoints, and Neer's and Hawkins signs were positive. *Id.* at 39. The orthopedist assessed left shoulder impingement syndrome and bursitis, for which he recommended activity modification (to avoid aggravation of the shoulder), prescribed Voltaren (diclofenac sodium 100mg extended-release tablets, once per day), and referred to physical therapy ("PT"). *Id.*

At the November 11, 2020, PT initial evaluation at Virginia Sports Medicine Institute, Petitioner reported that diclofenac sodium had "helped some"; her pain was currently 1/10 and at times reached 4/10. Ex. 4 at 18. She had difficulty putting milk in the fridge, Y press, and across the body movement. *Id.* Active ROM was decreased (flexion

3

and abduction 150 degrees, external rotation 75 degrees, internal rotation 70 degrees).[5] *Id.* Strength was also slightly decreased (4/5, compared to 4+/5 in the non-affected arm). *Id.* at 19. Her goals included returning to her regular exercise routine. *Id.* at 20. She returned to this PT practice for additional formal sessions on November 13th, 17th, 20th, and 24th. *Id.* at 10 – 17.

At a December 7th follow-up, the orthopedist proposed that Petitioner's "left shoulder injury pain is refractory to physical therapy with dry needling and [diclofenac sodium]." Ex. 13 at 44. A December 17th MRI visualized rotator cuff tendinopathy, mild subacromial subdeltoid bursitis, and possible adhesive capsulitis. Ex. 14 at 158. On December 17th, the orthopedist recommended "continued PT with aggressive stretching." Ex. 13 at 46.

Petitioner identified a new facility, Pivot Physical Therapy, through internet research. Ex. 9 at 112. At the December 18, 2020, initial evaluation, she reported mild difficulty with opening jars, heavy household chores, cutting food with a knife, recreational activities involving force or impact to the shoulder, and sleeping. *Id.* at 100. She rated her pain as currently 0/10 and reaching 5/10. *Id.* at 101. Left shoulder active ROM was normal, but shoulder abduction and end range flexion elicited pain. *Id.* at 102. Strength was still decreased (3 to -4/5), and Neer's and empty-can tests were positive. *Id.* at 103. She returned for PT on December 23rd, 28th, and 30th, 2020, and January 4th, 7th, 11th, 13th, and 26th, 2021. *Id.* at 55 – 94. On January 18th, 23rd, and 29th, Petitioner received massages to address shoulder pain (as well as hamstring tension). Ex. 21 at 3; *see also* Ex. 13 at 47 – 48 (orthopedist's record that the PT and massage were associated with improvement and should be continued).

On February 2nd, 2021, the orthopedist assessed that Petitioner's pain and function were not substantially improved despite PT and massage, and he administered a sub-acromial steroid injection within the glenohumeral joint. Ex. 13 at 49 – 50. At the orthopedist's direction,[6] later that day, Petitioner returned to the Virginia Sports Medicine Institute PT facility, where she rated her pain as currently 0/10 and reaching up to 3/10. Ex. 4 at 8. The therapist recorded that she had decreased active ROM and weakness, but she was able to participate in "light" PT and responded well to manual therapy. *Id.*

---

[5] Normal shoulder ROM for adults ranges from 165 to 180 degrees in flexion, 170 to 180 degrees in abduction, 90 to 100 degrees in external rotation, and 70 to 90 degrees in internal rotation. Cynthia C. Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 84, 88 (F. A. Davis Co., 5th ed. 2016), previously cited in *Edminster v. Sec'y of Health & Hum. Servs.*, No. 19-0184V, 2023 WL 3059218, n. 3 (Fed. Cl. Spec. Mstr. April 24, 2023).

[6] *See* Ex. 13 at 48 (plan for "cortisone injection with PT scheduled later in the day").

On February 9th, Petitioner returned to the Pivot PT facility, now reporting that since receiving the steroid injection she had experienced "no pain." Ex. 9 at 47. During the encounter, she was able to perform exercises, progressing to higher external rotation and scapular strengthening with no pain. *Id.* She was counseled about her ongoing muscle tightness, the need to avoid strenuous activity, and continuing her home exercise program ("HEP"). *Id.* On February 15th, Petitioner received another massage for shoulder pain. Ex. 21 at 3.

On March 17th, Petitioner presented to a *third* PT practice, MMA & Sports Rehab, for her left shoulder pain. Ex. 15 at 6. She reported: "s[eeing] physician after 5 weeks and went to PT for 3 months and didn't get better. Got cortisone shot at beginning of Feb which helped but the shot is wearing off and feeling pain. Most pain holding things away from body, sleeping on the shoulder. Has been able to continue strength training, but pain with pressing." *Id.* Her pain ranged from 1 – 3/10. *Id.* The therapist assessed that the left shoulder had strength deficits, painful active ROM, and impingement, and educated Petitioner on proper posture, avoiding aggravation, and adherence to a HEP. *Id.* at 8. Petitioner attended one more PT session at MMA on March 27, 2020. *Id.* at 4-5.[7]

### B. Analysis

The evidence reflects that Petitioner's SIRVA was (fortunately) mild. While the five medical encounters she experienced for other complaints within the first month of vaccination did not prevent me from finding that Petitioner's left shoulder pain began within 48 hours post-vaccination (*see* Findings of Fact at 10 – 11), they support the conclusion that her left shoulder pain was not a significant concern, and was initially manageable with the aspirin (an over-the-counter medication), which she had started taking in the context of her foot surgery. Only after the shoulder pain had persisted for 37 days did Petitioner go to her PCP (rather than say, an urgent care facility), receiving no additional medication at that time. Her orthopedics initial evaluation reflects a pain rating of 5/10. While the subsequent records state that diclofenac sodium (prescribed by the orthopedist), PT, dry needling, massage, and activity modification did not significantly improve her condition, Petitioner reported less severe and less constant pain. *See, e.g.*,

---

[7] Petitioner suggested that she received additional treatment for her SIRVA from a chiropractor. Brief at 8, 9, 10, 13. But I agree with Respondent that the chiropractic records "provide scant information regarding Petitioner's left shoulder[.]" Response at n. 6. The records note a (presumably left-sided) deltoid lesion and (presumably left shoulder) reduced range of motion, hindering Petitioner's ability to exercise. Ex. 28 at 11. But the records reflect palpation of *bilateral* muscles, myofascial release and trigger point therapy to "all affected muscles," and manipulation of the spine. They do not reflect any treatment specifically for the left shoulder – rather than her pre-existing low back, mid-back, and neck issues, which fall more squarely within a chiropractor's expertise. *See generally* Ex. 28.

Ex. 4 at 18 (pain rating of 0 – 4 /10); Ex. 9 at 101 (0 – 5/10). Four months into the course, she received one steroid injection which further reduced her pain. *See, e.g.*, Ex. 4 at 8 (0 – 3/10); Ex. 9 at 47 ("no pain"); Ex. 15 at 6 (1 – 3/10). Her ROM and strength were initially reduced, but also improved over time. She received a total of 4 massages and 18 formal PT sessions, concluding on March 27, 2020, just over six months post-vaccination. This treatment course demonstrates an injury which is sufficiently severe to be eligible for compensation under the Program, but it was nevertheless limited in scope and duration. I also recognize that the SIRVA necessitated modification of her exercise program, which was important to Petitioner's physical and mental wellbeing – but nothing else in the existing record substantiates the personal impact her injury had on her life.

Petitioner argues that she should be awarded $90,000.00 for her actual pain and suffering, favorably comparing herself to the petitioners in *Bruegging*, *Schandel*, *Gentile*, and *Miller*.[8] Brief at 10 – 14. Those cases are helpful as a starting point – each features an initial treatment delay, a treatment course concluding within approximately one year, and a lack of surgical intervention, and thus all reflect a mild to moderate injury, as is true here. But the *Schandel* petitioner's first medical encounter occurred just 15 days post-vaccination (with no intervening encounters for unrelated complaints), and that individual initially suffered "significant levels of pain and severely limited ROM for four to five months after vaccination," ultimately attending a total of 39 PT sessions. 2019 WL 5260368, at *12. Her injury was also assessed to be "severe" notwithstanding her refusal of a steroid injection (allegedly due to a fear of needles after experiencing the SIRVA). *Id.* at *4, 7.

Petitioner further contends her circumstances are comparable to *Bruegging*, *Gentile*, and *Miller* because each featured two steroid injections. Brief at 11, 13, 14. But the record reveals Petitioner received just *one* steroid injection. Otherwise, these cases are also distinguishable. For instance, *Miller* featured an earlier presentation for treatment (16 days). 2023 WL 4312920, at *1. Petitioner also suggests that the *Miller* petitioner's "MRI reflected no abnormalities," but that decision makes clear that the claimant "had an MRI of her humerus only, and only x-ray imaging of her shoulder, which suggests any comparison of findings is not useful in determining Ms. Miller's pain and suffering." *Id.* at *6.

---

[8] *Bruegging v. Sec'y of Health & Hum. Servs.*, No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019) (awarding $90,000.00 for actual pain and suffering); *Schandel v. Sec'y of Health & Hum. Servs.*, No. 16-0225V, 2019 WL 5260368, at *3 (Fed. Cl. Spec. Mstr. July 8, 2019) ($85,000.00); *Gentile v. Sec'y of Health & Hum. Servs.*, No. 16-980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020) ($85,000.00); *Miller v. Sec'y of Health & Hum. Servs.*, No. 20-0959V, 2023 WL 4312920 (Fed. Cl. Spec. Mstr. June 1, 2023) ($80,000.00).

*Bruegging* featured less delay in seeking treatment (24 days, and one intervening primary care encounter for possible bronchitis), with pain "severe enough that she received" a steroid injection at that first encounter; only "a one-week period of relief due to the cortisone injection"; and eventual acceptance of a second steroid injection and formal PT. 2019 WL 2620957, at *9. The MRI that claimant received also showed "moderate to severe" tendinitis, *Id.*, compared to the *mild to moderate* findings in Ms. Axelrod's case. And while *Gentile* involved a longer treatment delay (49 days, with two intervening encounters for diarrhea and headaches), that petitioner received her first steroid injection at her first encounter, and the second injection six months post-vaccination. 2020 WL 3618909, at *2. The *Gentile* decision also took into account proof of the emotional distress on the injured party not apparent in this case ("relinquishing her beloved dog and the demise of her marriage"). *Id.* at *14.

In contrast, Respondent argues for a lesser award of $52,500.00, maintaining that Petitioner's case is more comparable to *Merwitz*,[9] in which the petitioner "received one steroid injection, was provided one prescription, and attended seventeen (17) PT sessions. Ms. Merwitz's treatment lasted approximately eight months." Response at 6 – 7. The MRI findings from *Merwitz* also appear to be very similar – tendinitis, and mid to moderate subacromial and subdeltoid bursitis. 2022 WL 17820768, at *5. However, Petitioner sought treatment more quickly (37 days, versus 91 in *Merwitz)*, reported relatively higher and more consistent pain, had more significantly reduced ROM, and despite improvement, continued to experience pain with motion and weakness at the end of her formal course of treatment (just six months post-vaccination). Those factors warrant an upward adjustment from the sum allowed in *Merwitz*.

Overall based on a review of the case evidence, the parties' briefing, and comparison to past reasoned opinions, **I find that Petitioner's actual pain and suffering warrants an award of $65,000.00.**

## Conclusion

Based on the record as a whole and the parties' arguments, I award Petitioner a lump sum payment of **$66,988.25, representing $65,000.00 for actual pain and suffering, plus $1,988.25 for actual unreimbursable expenses.**[10]

---

[9] *Merwitz v. Sec'y of Health & Hum. Servs.*, No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Nov. 14, 2022) ((awarding $50,000.00 for actual pain and suffering).

[10] The parties have stipulated to the expenses. Brief at 1; Response at 2.

      This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

      **IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.